1  ALEX G. TSE (CABN 152348)
   United States Attorney
2
   BARBARA J. VALLIERE (DCBN 439353)
3  Chief, Criminal Division

4  CHRISTINA McCALL (CABN 234139)
   Assistant United States Attorney
5        1301 Clay Street, Suite 340S
         Oakland, California 94612
6        Telephone: (510) 637-3680
         FAX: (510) 637-3724
7        christina.mccall@usdoj.gov

8  Attorneys for Plaintiff

9
                    UNITED STATES DISTRICT COURT
10
                 NORTHERN DISTRICT OF CALIFORNIA
11
                         OAKLAND DIVISION
12

13 UNITED STATES OF AMERICA,              )  CASE NO. CR 18-0186 YGR
                                          )
14              Plaintiff,                 )  UNITED STATES' SENTENCING
                                          )  MEMORANDUM
15       v.                                )
                                          )
16 JEFFREY BRIAN PROVOST,                  )  Hearing:    January 10, 2019
                                          )  Time:       2:00 p.m.
17              Defendant.                 )
                                          )
18 _____ )

19                          **INTRODUCTION**

20        The United States respectfully submits its sentencing memorandum concerning defendant Jeffrey

21 Brian Provost.  Defendant, a resident of Rhode Island, encountered a 13-year-old middle school girl

22 (Minor Victim) in Contra Costa County through Facebook.  During a period of a couple of months,

23 Defendant communicated with the Minor Victim through text message, video chat, and Facebook

24 messenger.  Defendant induced and encouraged her to create pornographic images and videos and send

25 them to him through Facebook messenger.  Defendant then sent at least two of the child pornography

26 images of the Minor Victim to a person in the Philippines.

27        A federal grand jury charged defendant with: one count of production of child pornography (in

28 violation of 18 U.S.C. §§ 2251(a) and (e)); one count of online enticement of a minor (in violation of 18

1   U.S.C. § 2422(b)); and one count of receipt of child pornography (in violation of 18 U.S.C. §

2   2252(a)(2).  Dkt. #5.  On August 23, 2018, at the first reasonable opportunity, defendant pleaded guilty

3   Count Two of the Indictment charging him with online enticement of a minor, pursuant to a written Plea

4   Agreement under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.  The Plea Agreement,

5   should the Court choose to accept it, provides for a sentence of 120 months in prison (the mandatory

6   minimum sentence for the count of conviction), and ten years of supervised release, and restitution to be

7   determined by the court.  Dkt. #18 ¶ 8.  As part of the plea agreement, the government agreed to dismiss

8   the remaining charges at the time of sentencing, and not file any additional charges that could be filed as

9   a result of this investigation.  Id. ¶¶ 15, 16.

10                                    **BACKGROUND**

11  **A.    Factual Background**

12            1.      Facebook CyberTips

13            In early 2018, Facebook, Inc. submitted multiple CyberTips to the National Center for Missing

14  and Exploited Children (NCMEC), indicating that certain user accounts contained child pornography.

15  Presentence Report (PSR) ¶ 7.  NCMEC sent a CyberTip involving the Minor Victim to the Silicon

16  Valley Internet Crimes Against Children Task Force in late March of 2018.  The CyberTip indicated that

17  the Minor Victim appeared to have sent files containing self-produced child pornography to multiple

18  Facebook users, including defendant.  *Id.*  Some of the recipients of the child pornography files were

19  located in other countries; defendant and another man were prosecuted in the United States for offenses

20  involving the Minor Victim.  *Id.*  The CyberTip indicated that defendant was the recipient of multiple

21  child pornography files sent by the Minor Victim between December, 2017 and January, 2018.

22            2.      Interviews and Search Warrants

23            Following interviews with a middle school Resource Officer and a child forensic interviewer

24  where the Minor Victim described her interactions with defendant, a law enforcement officer searched

25  the minor victim's smart phone and tablet computer, with her parent's (the owner of the devices)

26  consent.  On March 27, 2018, United States Magistrate Judge Donna Ryu approved a search warrant

27  directed to Facebook for records associated with the minor victim's account and defendant's two

28  accounts.  PSR ¶ 14.

In communications with defendant, the Minor Victim told defendant multiple times that she was 13 years old.  PSR ¶ 15.  The defendant sent the Minor Victim photos of his erect penis, videos of himself masturbating, and adult pornography.  *Id.* ¶¶ 16, 22.  On a large number of occasions, defendant very explicitly told the Minor Victim what he would like to see her do to her body, encouraging and inducing her to create child pornography videos and photos and send them to him.[1]  *See* PSR ¶¶ 16, 17, 19, 22.  Defendant was also very sexually explicit about what he wanted to see the Minor Victim do during a video call with her on December 10, 2017.  *Id.* ¶¶ 20, 21.  In February of 2018, the Minor Victim wrote to defendant, telling him her birthday was coming up and she was going to be 14.  Defendant's response: "that calls for birthday SEX."

The search warrant revealed that defendant sent a child pornography video and photograph of the Minor Victim to a Facebook user in the Philippines.  PSR ¶¶ 24-25.

3.      Criminal Complaint and Arrest of Defendant

On April 19, 2018, United States Magistrate Judge Kandis Westmore authorized a sealed criminal complaint and arrest warrant, charging defendant with one count of sexual exploitation of children, in violation of 18 U.S.C. § 2251(a).  PSR ¶ 27.  On April 23, 2018 United States Magistrate Judge Sullivan of the District of Rhode Island authorized a search and seizure warrant for defendant's residence.  *Id.* ¶ 28.  When executing the search and arrest warrant, on the morning of April 24, the law enforcement team seized three smart phones.  *Id.* ¶ 29.

4.      Post-Arrest Interview

The defendant agreed to be interviewed following his arrest.  When asked if he had talked to a girl in California, defendant initially denied that he had.  Defendant then said he met a lot of girls on Facebook but remembered the Minor Victim's unusual screen name when the interviewer mentioned it.  PSR ¶ 30.  When asked what she looked like, defendant said he didn't remember.  *Id.*  He said he has thousands of girls on there (indicating Facebook).  Defendant said he drinks a lot and doesn't remember

---

[1] Consistent with 18 U.S.C. § 3771(a)(8), which provides that a crime victim has "[t]he right to be treated with fairness and with respect for the victim's dignity and privacy," the government will not recount the details of the conversations between the Minor Victim and defendant in this public filing, but will refer to the paragraphs in the Presentence Report setting forth some of the details.

what he and the Minor Victim talked about. *Id.* When asked how old the Minor Victim was, defendant claimed he did not know. *Id.* When the investigator said if the chats between the Minor Victim and defendant showed that she told him she was 13, defendant said that would "scare the s__t out of" him. The investigator asked defendant why he was talking to a 13-year-old girl on Facebook and he said he couldn't answer that. *Id.* During the course of the relatively short interview, defendant acknowledged that he is a smart enough person and should have known better than to communicate in a sexual way with an underage girl. *Id.* ¶ 33. During the interview, defendant referenced mental issues and alcohol abuse, but conceded that he probably was not drunk every time he chatted with the Minor Victim. *Id.* When asked why he sent the Minor Victim's sexual images to the user in the Philippines and commented on those images, he stated, "I don't know, I'm an a__hole." *Id.* Defendant stated that he wanted to tell the Minor Victim he was sorry. *Id.*

**SENTENCING GUIDELINES CALCULATIONS**

As set forth in the Plea Agreement and PSR, the total offense level is 29, after a base offense level of 28 (U.S.S.G. §2G1.3), application of specific offense characteristics reflecting use of a computer (2-level, U.S.S.G. §2G1.3(b)) and the commission of a sexual act (2-level, §2G1.3(b)(4)). Because defendant demonstrated full acceptance of responsibility at the earliest opportunity by not filing motions, not proceeding to trial, and by his guilty plea, the government moves for the third point under U.S.S.G. §3E1.1.

The Government agrees with the Probation Department's criminal history computations. PSR ¶ 51-54. Defendant has two prior convictions for driving under the influence of alcohol, resulting in two criminal history points. *Id.*

The suggested Guidelines sentencing range for Offense Level 29 and a Criminal History Category of II is 97 to 121 months of imprisonment. However, the statutory mandatory minimum penalty is 120 months, pursuant to 18 U.S.C. §2422(b), so the Guidelines' suggested sentencing range for this offense becomes 120 to 121 months of imprisonment.

**THE SPECIAL ASSESSMENT**

The Justice for Victims of Trafficking Act (JVTA) was enacted on May 29, 2015 and is codified in 18 U.S.C. § 3014.  Section 3014 provides for an enhanced special assessment for certain crimes, including 18 U.S.C. § 2422(b), stating in relevant part:

(a) In general. Beginning on the date of enactment of the Justice for Victims of Trafficking Act of 2015 and ending on September 30, 2019, in addition to the assessment imposed under section 3013, the court shall assess an amount of $5,000 on any non-indigent person or entity convicted of an offense under …

(4) chapter 117 (relating to transportation for illegal sexual activity and related crimes) . . . .

The JVTA directs that the enhanced special assessment shall not be paid until the defendant has paid all outstanding court-ordered fines and orders of restitution arising from the criminal convictions on which the special assessment is based. See 18 U.S.C. § 3014(b).

18 U.S.C. § 3013(a)(2)(A) provides for a $100 special assessment for any individual defendant convicted of a felony.  For a non-indigent defendant who committed a qualifying crime after May 29, 2015 and before September 30, 2019, courts shall impose a $100 regular special assessment under 18 U.S.C. §3013, plus a $5,000 JVTA special assessment under 18 U.S.C. § 3014.

Appellate courts have consistently found that district courts properly consider a defendant's future earnings potential when deciding whether the defendant is indigent for the purposes of the $5,000 JVTA special assessment.  *See United States v. Strange*, 2017 U.S. App. LEXIS 8761 (9th Cir. 2017); *United States v. Kelley*, 861 F.3d 790 (8th Cir. 2013); *United States v. Graves*, 908 F.3d 137 (5th. Cir. 2018); *United States v. Avalos*, 2018 U.S. App. LEXIS 21297 (10th. Cir. 2018); and *United States v. Janatsch*, 2018 U.S. App. LEXIS 2059 (10th Cir. 2018).

In this case, the Plea Agreement provided that the sentence (should the Court accept the proposed disposition) would include either a $5,100 or a $100 special assessment, depending upon whether the Court finds that defendant is "indigent."  Dkt. #18 ¶ 8.  The Probation Office acknowledged the JVTA's applicability (if the defendant is non-indigent) in paragraph 101 of the PSR.  In its Sentencing Recommendation, the Probation Office concluded, "The defendant is considered indigent

1    and is represented by court appointed counsel. Therefore, it appears he does not have the ability to pay a

2    fine or the $5,000 penalty under JVTA." Sentencing Recommendation at page 3.

3         Given the unique circumstances of this case, the government agrees that defendant is indigent for

4    the purposes of the JVTA special assessment, even when considering his future earnings potential. First,

5    it is undisputed that defendant has no appreciable assets at this time. PSR ¶ 91. Defendant was renting a

6    room, on a $130 weekly basis, in a house with 25 rooms and a communal bathroom, and had no objects

7    of obvious significant value in his room. *Id*. ¶ 64.

8         Second, defendant's future earnings potential is not promising. Defendant is 48 years old, and

9    will serve approximately eight more years in prison as a result of this conviction. Defendant has no

10   special skills or education (*see Id*. ¶¶ 83, 84), and has earned a living as a machine operator, forklift

11   driver, and landscaper, with declining earnings over time. *Id*. ¶¶ 85-90. When he is released from

12   custody at age 56, defendant will have to register as a sexual offender, and will likely find such manual

13   labor difficult to obtain and perform. There is no indication that defendant will receive financial support

14   from his family in the future. *Id*. ¶ 66. Defendant's history of substance abuse issues (*Id*. ¶¶ 76-82) and

15   mental health issues (*Id*. ¶¶ 71-75) make it less likely that he will have significant future earnings.

16        Finally, other considerations weigh against imposing the $5,000 JVTA special assessment in this

17   case, and weigh in favor of finding that defendant is indigent. Importantly, the Minor Victim in this

18   case is likely to file a claim for restitution, which is mandatory, and defendant will be obligated to pay

19   the amount of restitution the Court orders. Finally, defendant still owes back child support, further

20   cementing his status as indigent for the foreseeable future. *Id*. ¶ 91. For all of these reasons, the

21   government recommends that the Court conclude that defendant owes $100 in special assessments, and

22   is indigent for the purposes of the JVTA special assessment analysis.

23                    **ANALYSIS OF SENTENCING FACTORS UNDER 18 U.S.C. 3553(a)**

24   **A.    The Nature of the Offense**

25        This child exploitation offense involved defendant convincing a 13 year-old victim across the

26   country from the defendant to engage in video and electronic chats with him, for the purpose of creating

27   and sending child pornography videos and files to the defendant. In defendant's communications with

28

the Minor Victim, he very explicitly and repeatedly encouraged her to engage in sexual behavior for his own sexual gratification.  Even after he was aware that the Minor Victim got in big trouble with her parents for communicating with defendant, he did not cease his online exploitation of her.  Defendant then distributed two of the Minor Victim's pornographic files to an unknown Facebook user in the Philippines.  The case agent and the U.S. Attorney's Office have remained in contact with the family of the Minor Victim throughout the history of this case, and the family is aware of the victim's rights, and the right to address the Court.  The victim's family is currently trying to document the costs associated with the Minor Victim's interactions with the defendant (including current and ongoing counseling).

**B.    Characteristics of Defendant**

This is defendant's first felony conviction.  Defendant was raised in a loving and normal family, but began to abuse substances such as alcohol and narcotics starting at age 12.  PSR ¶¶ 76-81.  Defendant's poor choices while abusing such substances led to the end of multiple relationships (*Id*. ¶¶ 62-63), the loss of multiple jobs (*Id*. ¶¶ 85-86), and the sustained decision to commit the crimes charged in this indictment (*Id*. ¶ 36).

Knowing the severe consequences in the form of a lengthy period of incarceration, public shame and possible rejection by his family, defendant quickly accepted responsibility for his actions— beginning the day he was arrested.  Defendant, at the earliest realistic opportunity to do so, entered a guilty plea instead of exercising his right to a trial, and instead of filing motions to suppress evidence or statements.  Defendant began to express remorse and acceptance of the responsibility for the pain and suffering that he caused through his actions beginning with his post-arrest interview.  Defendant's rapid and full acceptance of responsibility ensured that the Minor Victim would not be further traumatized by testifying at a public trial.

**C.    Promote Respect for the Law, Protect the Public, Punishment and Deterrence**

The government respectfully submits that the recommended sentence of 120 months' imprisonment "reflect[s] the seriousness of the offense," "promote[s] respect for the law," and "provide[s] just punishment for the offense.  18 U.S.C. § 3553(a)(2)(A).  The recommended sentence

1    would deter defendant and others from using social media tools to reach children and induce and

2    encourage them to create child pornography videos and images to satisfy the adult's sexual desires.

3                                                    **CONCLUSION**

4            Based upon the reasons set forth above, the United States respectfully requests that the Court

5    impose the mandatory minimum sentence of 120 months in custody, to be followed by 10 years of

6    Supervised Release, with the conditions recommended by the United States Probation Officer, including

7    registration as a sex offender, and a $100 special assessment.  Pursuant to 18 U.S.C. § 3664(d)(5),

8    undersigned counsel informs the Court that the victim's losses are not ascertainable 10 days prior to

9    sentencing, and requests that the Court set a date for the final determination of the Minor Victim's losses

10   and set a restitution hearing within 90 days of the sentencing hearing.


12   DATED:  January 3, 2019                          Respectfully submitted,

13                                                    ALEX G. TSE
                                                      United States Attorney
14
                                                          /s/ ***Christina McCall***
15
                                                      CHRISTINA McCALL
16                                                    Assistant United States Attorney